RUSS, AUGUST & KABAT
Marc A. Fenster, SBN 181067
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Brian D. Ledahl (CA SBN 186579)
Email: bledahl@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Attorneys for Plaintiff*
*Data Scape Limited*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| DATA SCAPE LIMITED,<br><br>                              Plaintiff,<br><br>          vs.<br><br>SPOTIFY USA INC., and SPOTIFY TECHNOLOGY S.A.,<br><br>                              Defendants. | Case No. 2:18-cv-10653<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

This is an action for patent infringement arising under the Patent Laws of the United States of America, 35 U.S.C. § 1 *et seq.* in which plaintiff Data Scape Limited

("Plaintiff," "Data Scape") makes the following allegations against defendants Spotify USA Inc. and Spotify Technology S.A. ("Defendants" or "Spotify"):

## PARTIES

1.      Data Scape is a company organized under the laws of Ireland with its office located at Office 115, 4-5 Burton Hall Road, Sandyford, Dublin 18, Ireland.

2.      On information and belief, Defendant Spotify USA Inc. is a Delaware corporation with a principal place of business at 45 W. 18th Street, 7th Floor, New York, NY 1001. Spotify Technology S.A. is a company organized under the laws of the Grand Duchy of Luxembourg, with its principal place of business at 42-44, Avenue de la Gare, L-1610 Luxembourg. Spotify USA Inc. is a subsidiary of Spotify Technology S.A. Spotify can be served with process through its registered agent, National Registered Agents, Inc., 160 Greentree Dr. Ste. 101, Dover, DE 19904.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has original subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4.      This Court has personal jurisdiction over Spotify in this action because Spotify has committed acts within the Central District of California giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Spotify would not offend traditional notions of fair play and substantial justice.  Spotify, directly and through subsidiaries or intermediaries, has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe the asserted patents.

5.      Venue is proper in this district under 28 U.S.C. § 1400(b). Spotify is registered to do business in California, and upon information and belief, Spotify has transacted business in the Central District of California and has committed acts of direct and indirect infringement in the Central District of California. Spotify has a regular and established place of business in this District. For example, Spotify has a regional

headquarters at 9200 Sunset Blvd., West Hollywood, CA 90069, where it employs product marketing personnel.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 7,720,929

6.    Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

7.    Data Scape is the owner by assignment of United States Patent No. 7,720,929 ("the '929 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '929 Patent was duly and legally issued by the United States Patent and Trademark Office on May 18, 2010.  A true and correct copy of the '929 Patent is included as Exhibit A.

8.    Defendants have offered for sale, sold and/or imported into the United States products and services that infringe the '929 patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Defendants' products and services, *e.g.*, the Spotify music streaming platform, and all versions and variations thereof since the issuance of the '929 Patent ("Accused Instrumentalities").

9.    Defendants have directly infringed and continues to infringe the '929 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through their own use and testing of the Accused Instrumentalities. Defendants use the Accused Instrumentalities for their own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendants' customers.

10.    For example, the Accused Instrumentalities, including Spotify Premium, infringe Claim 1 of the '929 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

11. The Accused Instrumentalities include "[a] communication system including a first apparatus having a first storage medium, and a second apparatus." For example, the Accused Instrumentalities communicate music files and playlists stored on one device (e.g., a desktop computer with the Spotify app installed, or Access Point, Production Storage, User and Playlist) to another device (e.g., a user's mobile device or tablet with the Spotify app installed). *See, e.g.*, "Local Files," *available at* https://support.spotify.com/us/using_spotify/features/listen-to-local-files/ ("[Y]ou can also use your Spotify app to play music files stored on your computer (which we call "local files").").



https://www.slideshare.net/ricardovice/spotify-behind-the-scenes

12. The Accused Instrumentalities include a second apparatus comprising: "a second storage medium configured to store management information of data to be

transferred to said first storage medium." For example, the desktop computer, mobile devices, and server components include a storage medium, e.g. a hard drive. The second storage medium is configured to store management information of data to be transferred. *See, e.g.*, "Local Files," *available at* https://support.spotify.com/us/using_spotify/features/listen-to-local-files/ ("Import your local files to Spotify using the desktop app…[a]dd the files to a playlist.") ("In addition to over 35 million tracks we offer, you can also use your Spotify app to play music files stored on your computer (which we call "local files").").

13.    The Accused Instrumentalities further include a second apparatus comprising "a communicator configured to communicate with said first apparatus." For example, the desktop computer with the Spotify app installed (as well as Access Point, Production Storage, User and Playlist) includes a communicator configured to communicate with the mobile device or tablet. *See, e.g.*, "Local Files" ("Log in on your mobile or tablet using the same WiFi network as your desktop app.").

14.    The Accused Instrumentalities further include a second apparatus comprising "a detector configured to detect whether said first apparatus and a second apparatus are connected." For example, the desktop computer with the Spotify app installed (as well as Access Point, Production Storage, User and Playlist) includes a detector that determines whether the mobile device is connected to the Internet using the same WiFi network as the desktop application. *See, e.g.*, "Local Files" ("Log in on your mobile or tablet using the same WiFi network as your desktop app.") "Spotify Connect" *available at* https://support.spotify.com/us/listen_everywhere/in_the_car/spotify-connect/, ("Click connect to a device in the bottom-right. Select the device you'd like to play on.").

15.    The Accused Instrumentalities further include a second apparatus comprising "an editor configured to select certain data to be transferred and to edit said management information based on said selection without regard to the connection of said first apparatus." For example, the desktop computer with the Spotify app installed

(as well as Access Point, Production Storage, User and Playlist) allows a user to select the uploaded files and add the files to a playlist without regard to whether the mobile device or tablet is connected to the web server. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app.").

16. The Accused Instrumentalities further include a second apparatus comprising "a controller configured to control transfer of the selected data stored in said second apparatus to said first apparatus via said communicator based on said management information edited by said editor when said detector detects that said first apparatus and said second apparatus are connected." For example, the desktop computer with the Spotify app installed (as well as Access Point, Production Storage, User and Playlist) will allow the local files to be transferred to the mobile device or tablet if the mobile device or tablet is connected to the same WiFi network as the desktop. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select the playlist containing the local files. 5. Switch on download.").

17. The Accused Instrumentalities further include a second apparatus "wherein said controller is configured to compare said management information edited by said editor with management information of data stored in said first storage medium and to transmit data in said second apparatus based on result of the comparison." For example, before providing the mobile device or tablet the option to select the playlist containing the local files, the desktop computer with the Spotify app installed (as well as Access Point, Production Storage, User and Playlist) compares the playlist with the added local files with the corresponding playlist on the mobile device or tablet, and determines which songs on the playlist stored on the desktop computer are local files not yet stored on the mobile device or tablet. The desktop computer with the Spotify app installed then makes the local files available for download onto the mobile device or tablet. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile

or tablet using the same WiFi network as your desktop app. 4. Select the playlist containing the local files. 5. Switch on download.").

18.     Defendants have had knowledge of the '929 Patent and their infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendants will have known and intended (since receiving such notice) that their continued actions would actively induce and contribute to the infringement of the claims of the '929 Patent.

19.     Defendants' affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '929 Patent. Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '929 Patent.

20.     For example, Defendants explain to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of allowing users to use the Spotify app to play music files stored on the users' desktop computer. Defendants also induce their customers to use the Accused Instrumentalities to infringe other claims of the '929 Patent. Defendants specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '929 Patent. Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '929 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Defendants engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through their user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '929 Patent. Accordingly, Defendants have induced and continue to induce end users of the accused products to use the accused products in their ordinary and

customary way with compatible systems to make and/or use systems infringing the '929 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '929 Patent. Accordingly, Defendants have been (since at least as of filing of the original complaint), and currently are, inducing infringement of the '929 Patent, in violation of 35 U.S.C. § 271(b).

21. Defendants have also infringed, and continues to infringe, claims of the '929 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '929 Patent, and constitute a material part of the invention. Defendants know the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '929 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendants have been, and currently are, contributorily infringing the '929 Patent, in violation of 35 U.S.C. § 271(c).

22. For similar reasons, Defendants also infringe the '929 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '929 Patent if such combination occurred within the United States. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify app) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to use multiple devices, each with the Spotify app installed, to share files stored on distinct devices) outside of the United States.

23.     Defendants also indirectly infringe the '929 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '929 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '929 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify Premium app) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendants' own actions or instructions to users in, e.g., combining multiple devices with the Spotify app installed, into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

24.     As a result of Defendants' infringement of the '929 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

**COUNT II**

**INFRINGEMENT OF U.S. PATENT NO. 7,617,537**

25.     Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

26.     Data Scape is the owner by assignment of United States Patent No. 7,617,537 ("the '537 Patent"), entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '537 Patent was duly and legally issued by the United States Patent and Trademark Office on May 18, 2010.  A true and correct copy of the ' 537 Patent is included as Exhibit B.

27.     Defendants have offered for sale, sold and/or imported into the United States products and services that infringe the '537 patent, and continues to do so.  By way of illustrative example, these infringing products and services include, without limitation, Defendants' products and services, *e.g.*, the Spotify music streaming platform, and all versions and variations thereof since the issuance of the '537 Patent ("Accused Instrumentalities").

28.     Defendants have directly infringed and continue to infringe the '537 Patent, for example, by making, selling, offering for sale, and/or importing the Accused Instrumentalities, and through their own use and testing of the Accused Instrumentalities. Defendants use the Accused Instrumentalities for their own internal non-testing business purposes, while testing the Accused Instrumentalities, and while providing technical support and repair services for the Accused Instrumentalities to Defendants' customers.

29.     For example, the Accused Instrumentalities, including Spotify Premium, infringe Claim 1 of the '537 Patent. One non-limiting example of the Accused Instrumentalities' infringement is presented below:

30.     The Accused Instrumentalities perform a communication method to transfer content data to a first apparatus from a second apparatus. For example, a mobile device with the Spotify app (e.g. a first apparatus) can connect to a desktop computer

with the Spotify app (or to Access Point, Production Storage, User and Playlist), to transfer files, e.g. music files, stored in the desktop computer to the mobile device (e.g. a second apparatus). *See, e.g.*, "Local Files", *available at* https://support.spotify.com/us/using_spotify/features/listen-to-local-files/ ("[Y]ou can also use your Spotify app to play music files stored on your computer (which we call "local files").").



https://www.slideshare.net/ricardovice/spotify-behind-the-scenes

31. The Accused Instrumentalities perform a communication method to transfer content data from a first apparatus to a second apparatus further comprising judging whether said first apparatus and said second apparatus are connected. For example, the Spotify app on the desktop computer can only transfer music files between the desktop computer and the mobile device if it determines that the devices are

connected on the same WiFi network. *See, e.g.*, "Local Files" ("Log in on your mobile or tablet using the same WiFi network as your desktop app.") ("Didn't work?...check the following:…your devices are connected to the same WiFi network.").

32.  The Accused Instrumentalities perform a communication method to transfer content data from a first apparatus to a second apparatus further comprising comparing, upon judging that said first apparatus and said second apparatus are connected, an identifier of said first apparatus with an identifier stored in said second apparatus. For example, when the mobile device is connected to the desktop computer, the Spotify app on the desktop computer will display an identifier associated with the mobile device. *See, e.g.*, "Spotify Connect" ("Click connect to a device in the bottom-right. Select the device you'd like to play on."). https://support.spotify.com/us/listen_everywhere/in_the_car/spotify-connect/

33.  The Accused Instrumentalities perform a communication method to transfer content data from a first apparatus to a second apparatus further comprising comparing, when said identifier of said first apparatus corresponds to said identifier stored in second apparatus, a first list of content data of said first apparatus and a second list of content data of said second apparatus. For example, when the mobile device is connected to the desktop (or to Access Point, Production Storage, User and Playlist), the Spotify app will compare playlists of music present on the mobile device to playlists present on the desktop to determine which files to transfer to the mobile device. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select [on the mobile device] the playlist containing the local files.").

34.  The Accused Instrumentalities perform a communication method to transfer content data from a first apparatus to a second apparatus further comprising transferring, from the second apparatus to the first apparatus, first content data, which is registered in said second list and is not registered in said first list.  For example, the Spotify app will transfer only songs found in the playlist of the desktop (or Access Point,

Production Storage, User and Playlist) that are not found in the playlist of the mobile device. *See, e.g.*, "Local Files" ("2. Add the [local] files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select [on the mobile device] the playlist containing the local files. 5. Switch on Download").

35. The Accused Instrumentalities perform a communication method to transfer content data from a first apparatus to a second apparatus further comprising deleting, from the first apparatus, second content data, which registered in said first list and is not registered in the second list. For example, if a "local file" on the desktop is deleted from the desktop (or Access Point, Production Storage, User and Playlist), that local file is also deleted from any playlist on the desktop Spotify app that included the deleted local file. Upon the next sync between the Spotify app on the desktop and the Spotify app on mobile device, the local file is then deleted from the mobile device.

36. Defendants have had knowledge of the '537 Patent and their infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendants will have known and intended (since receiving such notice) that their continued actions would actively induce and contribute to the infringement of the claims of the '537 Patent.

37. Defendants' affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '537 Patent. Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '537 Patent.

38. For example, Defendants explain to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of allowing users to use the Spotify app to play music files stored on the users' desktop computer. Defendants also induce their customers to use the Accused Instrumentalities to infringe other claims of the '537 Patent. Defendants specifically intended and were aware that the normal and

customary use of the Accused Instrumentalities on compatible systems would infringe the '537 Patent. Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '537 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Defendants engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '537 Patent. Accordingly, Defendants have induced and continue to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '537 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '537 Patent. Accordingly, Defendants have been (since at least as of filing of the original complaint), and currently are, inducing infringement of the '537 Patent, in violation of 35 U.S.C. § 271(b).

39. Defendants have also infringed, and continue to infringe, claims of the '537 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '537 Patent, and constitute a material part of the invention. Defendants know the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '537 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendants have been, and currently are, contributorily infringing the '537 Patent, in violation of 35 U.S.C. § 271(c).

40. For similar reasons, Defendants also infringe the '537 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the

components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '537 Patent if such combination occurred within the United States. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify app) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to use multiple devices, each with the Spotify app installed, to share files stored on distinct devices) outside of the United States.

41. Defendants also indirectly infringe the '537 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '537 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '537 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify Premium app) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendants' own actions or instructions to users in, e.g., combining multiple devices with the Spotify app installed,

into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

42. As a result of Defendants' infringement of the '537 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

## COUNT III

## INFRINGEMENT OF U.S. PATENT NO. 9,380,112

43. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

44. Data Scape is the owner by assignment of United States Patent No. 9,380,112 ("the '112 Patent") entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '112 Patent was duly and legally issued by the United States Patent and Trademark Office on June 28, 2016. A true and correct copy of the '112 Patent is included as Exhibit C.

45. Defendants have offered for sale, sold and/or imported into the United States products and services that infringe the '112 patent, and continues to do so. By way of illustrative example, these infringing products and services include, without limitation, Defendants' products and services, *e.g.*, the Spotify music streaming platform, and all versions and variations thereof since the issuance of the '112 Patent ("Accused Instrumentalities").

46. The Accused Instrumentalities includes "[a] communication apparatus configured to transfer data to a portable apparatus." For example, a mobile device with the Spotify app installed (e.g. a portable apparatus) can be connected to a desktop computer with the Spotify app installed (or Access Point, Production Storage, User and Playlist), to transfer files, e.g. local files, stored on the desktop computer (e.g. a communication apparatus) to the mobile device. *See, e.g.*, "Local Files", *available at*

https://support.spotify.com/us/using_spotify/features/listen-to-local-files/ ("In addition to over 35 million tracks we offer, you can also use your Spotify app to play music files stored on your computer (which we call "local files").").



https://www.slideshare.net/ricardovice/spotify-behind-the-scenes

47.    The Accused Instrumentalities include a communication apparatus comprising "a memory configured to store a first list of musical content data." For example, the desktop computer with the Spotify app installed (and mobile devices and server components) contains memory that will store musical files as individual files, or as playlists: *See, e.g.*, "Local Files" ("In addition to over 35 million tracks we offer, you can also use your Spotify app to play music files stored on your computer (which we call "local files").").

48.     The Accused Instrumentalities include a communication apparatus comprising "a data interface configured to detect a connection between the communication apparatus and the portable apparatus." For example, when the mobile device is connected to the desktop computer (or Access Point, Production Storage, User and Playlist), the Spotify app on the desktop computer will display an identifier associated with the mobile device. *See, e.g.*, "Spotify Connect" *available at* https://support.spotify.com/us/listen_everywhere/in_the_car/spotify-connect/, ("Click connect to a device in the bottom-right. Select the device you'd like to play on.").

49.     The Accused Instrumentalities further include circuitry configured to "edit the first list of musical content based on input from a user without regard to the connection of the communication apparatus and the portable apparatus." For example, the Spotify app installed on the desktop computer allows a user to select the uploaded files and add the files to a playlist without regard to whether the mobile device is connected to the desktop computer. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app.").

50.     The Accused Instrumentalities further include circuitry configured to "compare the edited first list of musical content with a list of musical content stored in the portable apparatus." For example, when the mobile device is connected to the desktop, the Spotify app will compare playlists of music present on the mobile device to playlists present on the desktop to determine which files to transfer to the mobile device. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select [on the mobile device] the playlist containing the local files.").

51.     The Accused Instrumentalities further include circuitry configured to "control transfer of selected musical content data stored in the communication apparatus to the portable apparatus via the data interface based on a result of the comparison after the connection of the communication apparatus and the portable apparatus in

connected." For example, when the mobile device is connected to the desktop, the Spotify app will compare playlists of music present on the mobile device to playlists present on the desktop to determine which files to transfer to the mobile device. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select [on the mobile device] the playlist containing the local files.").

52.    The Accused Instrumentalities further include circuitry configured to "control playback of musical content data based on the edited first list of musical content data so that the musical content data referenced in the edited first list of musical content data is played back as a collection, the edited first list of musical content data being associated with an identifier stored in the communication apparatus that uniquely identifies the portable apparatus." For example, the local files stored on the desktop computer are transferred to the portable device as part of a playlist, and can be played back as part of a collection on the portable device. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select [on the mobile device] the playlist containing the local files."). Further, when a portable device with the Spotify app installed (*e.g.*, a mobile device or tablet) is connected to a desktop computer with the Spotify app installed, the desktop computer will display an identifier associated with the portable device. *See, e.g.*, "Spotify Connect" ("Click connect to a device in the bottom-right. Select the device you'd like to play on.").

53.    Defendants have had knowledge of the '112 Patent and their infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendants will have known and intended (since receiving such notice) that their continued actions would actively induce and contribute to the infringement of the claims of the '112 Patent.

54.    Defendants' affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce

users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '112 Patent. Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '112 Patent.

55. For example, Defendants explain to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of allowing users to use the Spotify app to play music files stored on the users' desktop computer. Defendants also induce their customers to use the Accused Instrumentalities to infringe other claims of the '112 Patent. Defendants specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '112 Patent. Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '112 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Defendants engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through its user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '112 Patent. Accordingly, Defendants have induced and continue to induce end users of the accused products to use the accused products in their ordinary and customary way with compatible systems to make and/or use systems infringing the '112 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '112 Patent. Accordingly, Defendants have been (since at least as of filing of the original complaint), and currently are, inducing infringement of the '112 Patent, in violation of 35 U.S.C. § 271(b).

56. Defendants have also infringed, and continue to infringe, claims of the '112 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '112 Patent, and constitute a material part of

the invention. Defendants know the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '112 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendants have been, and currently are, contributorily infringing the '112 Patent, in violation of 35 U.S.C. § 271(c).

57.     For similar reasons, Defendants also infringe the '112 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '112 Patent if such combination occurred within the United States. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify app) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to use multiple devices, each with the Spotify app installed, to share files stored on distinct devices) outside of the United States.

58.     Defendants also indirectly infringe the '112 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '112 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '112 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other

uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify Premium app) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendants' own actions or instructions to users in, e.g., combining multiple devices with the Spotify app installed, into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

59. As a result of Defendants' infringement of the '112 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

**COUNT IV**

**INFRINGEMENT OF U.S. PATENT NO. 9,712,614**

60. Plaintiff realleges and incorporates by reference the foregoing paragraphs, as if fully set forth herein.

61. Data Scape is the owner by assignment of United States Patent No. 9,712,614 ("the '614 Patent") entitled "Communication System And Its Method and Communication Apparatus And Its Method." The '614 Patent was duly and legally issued by the United States Patent and Trademark Office on July 18, 2017. A true and correct copy of the '614 Patent is included as Exhibit D.

62. Defendants have offered for sale, sold and/or imported into the United States products and services that infringe the '614 patent, and continues to do so. By way of illustrative example, these infringing products and services include, without

limitation, Defendants' products and services, *e.g.*, the Spotify music streaming platform, and all versions and variations thereof since the issuance of the '614 Patent ("Accused Instrumentalities").

63.     The Accused Instrumentalities includes "[a] communication apparatus." For example, a mobile device with the Spotify app installed can be connected to a desktop computer with the Spotify app installed, to transfer files, e.g. local files, stored on the desktop computer (or Access Point, Production Storage, User and Playlist) (e.g. a communication apparatus) to the mobile device. *See, e.g.*, "Local Files", *available at* https://support.spotify.com/us/using_spotify/features/listen-to-local-files/ ("In addition to over 35 million tracks we offer, you can also use your Spotify app to play music files stored on your computer (which we call "local files").").



https://www.slideshare.net/ricardovice/spotify-behind-the-scenes

64.    The Accused Instrumentalities include a communication apparatus comprising "a memory configured to store musical content data and a plurality of program lists associated with the musical content data." For example, the desktop computer with the Spotify app installed (or mobile devices or server components) contains memory that will store musical files as individual files, or as playlists: *See, e.g.*, "Local Files" ("In addition to over 35 million tracks we offer, you can also use your Spotify app to play music files stored on your computer (which we call "local files").").

65.    The Accused Instrumentalities include a communication apparatus further comprising "a data interface configured to interface with an external reproduction apparatus." For example, when a mobile device or tablet (e.g. external reproduction apparatus) is connected to the desktop computer with the Spotify app installed (or Access Point, Production Storage, User and Playlist) (e.g. the communication apparatus), the desktop computer will display a graphic user interface through the Spotify app, allowing access to the data contained on the portable device. *See, e.g.*, "Spotify Connect" ("Click connect to a device in the bottom-right. Select the device you'd like to play on.").

66.    The Accused Instrumentalities further include a communication apparatus comprising circuitry configured to "control playback of musical content data based on a program lists so that the musical content data referenced in the program list is played back as a collection, the program list being associated with a predetermined identifier uniquely identifying a predetermined external reproduction apparatus among a plurality of reproduction apparatuses. For example, the Spotify app allows musical files to be played as a "Playlist" consisting of a collection of musical files. *See, e.g.*, "Playlists" *available at* https://support.spotify.com/us/using_spotify/playlists/create-a-playlist/, ("Put simply, a playlist is a collection of music. You can make them for yourself, you can share them, and you can enjoy the millions of other playlists created by Spotify, artists, and fans." Further, when a mobile device with the Spotify app installed is

connected to a desktop computer with the Spotify app installed, the desktop computer will display an identifier associated with the mobile device, while also displaying other identifiers associated with other playback devices (e.g., a plurality of external reproduction apparatuses).

67. The Accused Instrumentalities further include a communication apparatus comprising circuitry configured to "control presentation of the program list to a user via user interface." For example, the Spotify app includes a graphic user interface that will show the Playlists that are available.

68. The Accused Instrumentalities further include a communication apparatus comprising circuitry configured to accept edits to the program list via the user interface. For example, using the Spotify app, a user can edit or modify Playlists. *See, e.g.,* "Playlists" ("Create a playlist 1. Click New Playlist in the menu on the left. 2. Give your playlist a name and click CREATE.").

69. The Accused Instrumentalities further include circuitry configured to "determine whether an identifier received by the circuitry via the data interface is the predetermined identifier." For example, when external reproduction apparatus (*e.g.* a mobile device or tablet) is connected to the desktop computer, the Spotify app will display an identifier associated with that device. *See, e.g.*, "Spotify Connect" ("Click connect to a device in the bottom-right. Select the device you'd like to play on.").

70. The Accused Instrumentalities further include circuitry configured to "control transfer of the musical content data to the predetermine external reproduction apparatus via the data interface based on the program list when the received identifier is the predetermined identifier without receiving information on selection of the musical content data from the predetermined external reproduction apparatus." For example, if a "local file" on the desktop is deleted from the desktop, that local file is also deleted from any playlist on the desktop Spotify app that included the deleted local file. Upon the next sync between the Spotify app on the desktop and the Spotify app on mobile device, the local file is then deleted from the mobile device.

71.     The Accused Instrumentalities further include circuitry configured to "compare the program list with a second list of musical content data stored in the predetermined external reproduction apparatus." For example, when the mobile device is connected to the desktop, the Spotify app will compare playlists of music present on the mobile device to playlists present on the desktop to determine which files to transfer to the mobile device. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select [on the mobile device] the playlist containing the local files.").

72.     The Accused Instrumentalities further include circuitry configured to "identify a piece of musical content data common to the program list and the second list based on the result of the comparison." For example, the Spotify app will determine what files in the playlist are "local files" that can be downloaded, and what files are already on both the desktop computer and the mobile device. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as your desktop app. 4. Select [on the mobile device] the playlist containing the local files."). Local files already present on both the mobile device and the desktop computer can be played and remain so when the "Download Songs" switch is in the "Off" position.

73.     The Accused Instrumentalities further include circuitry configured to "control transfer to the predetermined external reproduction apparatus of the musical content data that is in the program list and is not in the second list of musical content data based on the result of the comparison such that transfer of the identified piece of musical content data common to the program list and the second list is omitted." For example, after determining which Local Files have already been downloaded to the mobile device, the Spotify app will download only those Local Files from the desktop computer that are not present in the mobile device. *See, e.g.*, "Local Files" ("2. Add the files to a playlist. 3. Log in on your mobile or tablet using the same WiFi network as

your desktop app. 4. Select the playlist containing the local files. 5. Switch on download.").

74.     Defendants have had knowledge of the '614 Patent and their infringement since at least the filing of the original Complaint in this action, or shortly thereafter, including by way of this lawsuit. By the time of trial, Defendants will have known and intended (since receiving such notice) that their continued actions would actively induce and contribute to the infringement of the claims of the '614 Patent.

75.     Defendants' affirmative acts of making, using, selling, offering for sale, and/or importing the Accused Instrumentalities have induced and continue to induce users of the Accused Instrumentalities to use the Accused Instrumentalities in their normal and customary way to infringe the claims of the '614 Patent. Use of the Accused Instrumentalities in their ordinary and customary fashion results in infringement of the claims of the '614 Patent.

76.     For example, Defendants explain to customers the benefits of using the Accused Instrumentalities, such as by touting their advantages of allowing users to use the Spotify app to play music files stored on the users' desktop computer. Defendants also induce their customers to use the Accused Instrumentalities to infringe other claims of the '614 Patent. Defendants specifically intended and was aware that the normal and customary use of the Accused Instrumentalities on compatible systems would infringe the '614 Patent. Defendants performed the acts that constitute induced infringement, and would induce actual infringement, with the knowledge of the '614 Patent and with the knowledge, or willful blindness to the probability, that the induced acts would constitute infringement. On information and belief, Defendants engaged in such inducement to promote the sales of the Accused Instrumentalities, *e.g.,* through their user manuals, product support, marketing materials, demonstrations, installation support, and training materials to actively induce the users of the accused products to infringe the '614 Patent. Accordingly, Defendants have induced and continue to induce end users of the accused products to use the accused products in their ordinary and

customary way with compatible systems to make and/or use systems infringing the '614 Patent, knowing that such use of the Accused Instrumentalities with compatible systems will result in infringement of the '614 Patent. Accordingly, Defendants have been (since at least as of filing of the original complaint), and currently are, inducing infringement of the '614 Patent, in violation of 35 U.S.C. § 271(b).

77. Defendants have also infringed, and continue to infringe, claims of the '614 Patent by offering to commercially distribute, commercially distributing, making, and/or importing the Accused Instrumentalities, which are used in practicing the process, or using the systems, of the '614 Patent, and constitute a material part of the invention. Defendants know the components in the Accused Instrumentalities to be especially made or especially adapted for use in infringement of the '614 Patent, not a staple article, and not a commodity of commerce suitable for substantial noninfringing use. For example, the ordinary way of using the Accused Instrumentalities infringes the patent claims, and as such, is especially adapted for use in infringement. Accordingly, Defendants have been, and currently are, contributorily infringing the '614 Patent, in violation of 35 U.S.C. § 271(c).

78. For similar reasons, Defendants also infringe the '614 Patent by supplying or causing to be supplied in or from the United States all or a substantial portion of the components of the Accused Instrumentalities, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '614 Patent if such combination occurred within the United States. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify app) components of the Accused Instrumentalities in such a manner as to actively induce the combination of such components (e.g., by instructing users to use multiple devices, each with the Spotify app installed, to share files stored on distinct devices) outside of the United States.

79.    Defendants also indirectly infringe the '614 Patent by supplying or causing to be supplied in or from the United States components of the Accused Instrumentalities that are especially made or especially adapted for use in infringing the '614 Patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use, and where such components are uncombined in whole or in part, knowing that such components are so made or adapted and intending that such components are combined outside of the United States in a manner that would infringe the '614 Patent if such combination occurred within the United States. Because the Accused Instrumentalities are designed to operate as the claimed system and apparatus, the Accused Instrumentalities have no substantial non-infringing uses, and any other uses would be unusual, far-fetched, illusory, impractical, occasional, aberrant, or experimental. For example, Defendants supply or cause to be supplied in or from the United States all or a substantial portion of the software (e.g., the Spotify Premium app) components that are especially made or especially adapted for use in the Accused Instrumentalities, where such hardware and software components are not staple articles or commodities of commerce suitable for substantial noninfringing use, knowing that such components are so made or adapted and intending that such components are combined outside of the United States, as evidenced by Defendants' own actions or instructions to users in, e.g., combining multiple devices with the Spotify app installed, into infringing systems, and enabling and configuring the infringing functionalities of the Accused Instrumentalities.

80.    As a result of Defendants' infringement of the '614 Patent, Plaintiff Data Scape is entitled to monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Data Scape respectfully requests that this Court enter:

a.     A judgment in favor of Plaintiff that Defendants have infringed, either literally and/or under the doctrine of equivalents, the '929 Patent, the '537 Patent, the '614 Patent, and the '112 Patent (collectively, "asserted patents");

b.     A permanent injunction prohibiting Defendants from further acts of infringement of the asserted patents;

c.     A judgment and order requiring Defendants to pay Plaintiff its damages, costs, expenses, and prejudgment and post-judgment interest for its infringement of the asserted patents, as provided under 35 U.S.C. § 284;

d.     A judgment and order requiring Defendants to provide an accounting and to pay supplemental damages to Data Scape, including without limitation, prejudgment and post-judgment interest;

e.     A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Plaintiff its reasonable attorneys' fees against Defendants; and

f.     Any and all other relief as the Court may deem appropriate and just under the circumstances.

## **DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.


Respectfully Submitted,

Dated: December 26, 2018

/s/ Reza Mirzaie
RUSS AUGUST & KABAT
Marc A. Fenster, SBN 181067
Email: mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
Email: rmirzaie@raklaw.com
Brian D. Ledahl (CA SBN 186579)

Email: bledahl@raklaw.com
Paul Kroeger (CA SBN 229074)
Email: pkroeger@raklaw.com
C. Jay Chung (CA SBN 252794)
Email: jchung@raklaw.com
Philip X. Wang (CA SBN 262239)
Email: pwang@raklaw.com

*Attorneys for Plaintiff Data Scape Limited*